**REESE LLP**
Michael R. Reese
100 West 93rd Street, 16th Floor
New York, New York 10025
Telephone: (212) 643-0500
Email: *mreese@reesellp.com*

**REESE LLP**
Charles D. Moore
100 South 5th Street, Suite 1900
Minneapolis, Minnesota 55402
Telephone: (701) 390-7214
Email: cmoore@reesellp.com

**THE SULTZER LAW GROUP P.C.**
Jason P. Sultzer
85 Civic Center, Suite 200
Poughkeepsie, New York 12601
Telephone: (845) 483-7100
Email: *sultzerj@thesultzerlawgroup.com*

*Co-Counsel for Plaintiff and the Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

————————————————————x

Todd Miller, individually and on behalf of : 
all others similarly situated, : 
                                  :   Case No. 1:22-cv-574

        Plaintiff, : 
                                   : 
v. : 
                                   :               **DRAFT**
                                   :   **CLASS ACTION COMPLAINT**
Sanofi Consumer Healthcare and Chattem, Inc., : 
                                   :   **<u>JURY TRIAL DEMANDED</u>**
        Defendants. : 

————————————————————x

Plaintiff, Todd Miller (hereinafter "Plaintiff"), individually and on behalf of all others similarly situated, by his attorneys, alleges the following upon information and belief, except for those allegations pertaining to Plaintiff, which are based on personal knowledge:

## NATURE OF THE ACTION

1.      This action seeks to remedy the deceptive and misleading business practices of Sanofi Consumer Healthcare and Chattem, Inc. (hereinafter "Defendants") with respect to the marketing and sales of Defendants' Dulcolax products that represent that they are natural ("Products").

2.      Defendants manufacture, sell, and distribute the Products using a marketing and advertising campaign centered around claims that appeal to health-conscious consumers, i.e., that their Products are natural; however, Defendants' advertising and marketing campaign is false, deceptive, and misleading because the Products contain non-natural, synthetic ingredients.

3.      Plaintiff and those similarly situated who bought the Products in New York ("Class Members") relied on Defendants' misrepresentations that the Products are natural when purchasing the Products.  Plaintiff and Class Members paid a premium for the Products based upon their natural representation, and, as a result suffered an injury in the amount of the premium paid. Plaintiff and the other Class Members are entitled to statutory damages as well as other relief.

4.      Defendants' conduct violated and continues to violate, *inter alia*, New York General Business Law §§ 349 and 350.  Defendants have been and continue to be unjustly enriched. Accordingly, Plaintiff brings this action against Defendants on behalf of himself and Class Members who purchased the Products during anytime from January 21, 2016 to the date of final judgment (the "Class Period").

1

## FACTUAL BACKGROUND

5.     Consumers have become increasingly concerned about the effects of synthetic, artificial and chemical ingredients in food, dietary supplements, cleaning products, bath and beauty products and everyday household products.  Companies such as Defendants have capitalized on consumers' desire for purportedly "natural products."  Indeed, consumers are willing to pay, and have paid, a premium for products branded "natural" over products that contain synthetic ingredients.  In 2015, sales of natural products grew 9.5% to $180 billion.[1]  Reasonable consumers, including Plaintiff and Class Members, value natural products for important reasons, including the belief that they are safer and healthier than alternative products that are not represented as natural.

6.     Despite the Products containing a number of synthetic ingredients, Defendants market the Products as being natural.  Below are just two examples of the Products' labeling at issue:

---

[1] *Natural Products Industry Sales up 9.5% to $180bn Says NBJ,* FOOD NAVIGATOR, http://www.foodnavigator-usa.com/Markets/EXPO-WEST-trendspotting-organics-natural-claims/(page)/6; *see also*  Shoshanna Delventhal, *Study Shows Surge in Demand for "Natural" Products*, INVESTOPEDIA (February 22, 2017), http://www.investopedia.com/articles/investing/022217/study-shows-surge-demand-natural-products.asp (Study by Kline Research indicated that in 2016, the personal care market reached 9% growth in the U.S. and 8% in the U.K. The trend-driven natural and organic personal care industry is on track to be worth $25.1 million by 2025); *Natural living: The next frontier for growth? [NEXT Forecast 2017]*, NEW HOPE NTWORK (December 20, 2016), http://www.newhope.com/beauty-and-lifestyle/natural-living-next-frontier-growth-next-forecast-2017.

**Dulcolax Soft Chews Mixed Berry**



**Synthetic Ingredients:**

FD&C red no. 40
Glycerin
Lecithin (Soy)

3

**Dulcolax Liquid Cherry**



**Synthetic Ingredients:**

Anhydrous Citric Acid
D&C Red No. 28
Glycerin
Sorbitol
Xanthan Gum

4

7.    Defendants' representations that the Products are natural, are false, misleading, and deceptive because the Products contain multiple ingredients that are, as explained below, synthetic.

a.    **Citric Acid** is (2-hydroxy-propane-1, 2,3-tricarboxylic acid) is a synthetic substance. While the chemical's name has the word "citric" in it, citric acid is no longer extracted from the citrus fruit but industrially manufactured by fermenting certain genetically mutant strains of the black mold fungus, *Aspergillus niger*.

b.    **D&C Red No. 28** is a synthetic color additive or food dye;[2]

c.    **FD&C red no. 40** is a synthetic color additive or food dye;[3]

d.    **Glycerin** is a factory-produced texturizer that is created by complex processing.  It is recognized by federal regulations as synthetic.  *See* 7 C.F.R. § 205.605(b).  It is commonly used as a filler and thickening agent.  It requires multiple processing steps in an industrial environment to create Glycerin.  Therefore, it cannot be described as "natural."  A technical evaluation report compiled by the USDA AMS Agricultural Analytics Division for the USDA National Organic Program explains that Glycerin is "produced by a hydrolysis of fats and oils" and is listed in the USDA Organic Program's National List as a "synthetic nonagricultural (nonorganic) substance."  The same report lists several methods of producing Glycerin, each of which involve numerous steps that include the use of high temperatures, pressure, and purification to get an end product.

| Processes for producing glycerin by hydrolysis of fats and oils[4] | |
| --- | --- |
| Lemmens Fryer's Process | Oil or fat is subjected in an autoclave to the conjoint action of heat and pressure (about 100 PSI) in the presence of an emulsifying and accelerating agent, e.g. zinc oxide or hydroxide (sodium hydroxide can be substituted) for about eight hours. The strong solution of glycerin formed is withdrawn and replaced by a quantity of hot, clean and preferably distilled water equal to about one third to one fourth of the weight of the original charge of oil or fat and treatment continued for an additional four hours. The dilute glycerin obtained from the latter part of the process is drawn off and used for the initial treatment of the further charge of oil or fat. |

---

[2] https://www.foodcolor.com/synthetic_colors.html
[3] https://www.healthline.com/nutrition/red-dye-40
[4] https://www.ams.usda.gov/sites/default/files/media/Glycerin%20Petition%20to%20remove%20TR%202013.pdf

| Budde and Robertson's Process | The oils or fats are heated and mechanically agitated with water and sulphuric acid gas, under pressure in a closed vessel or autoclave. The advantage claimed for the process are that the contents of the vessel are free from foreign matter introduced by reagents and need no purification; that the liberated glycerin is in the form of a pure and concentrated solution; that no permanent emulsion is formed and that the fatty acids are not discolored. |
| --- | --- |
| Ittner's Process | Coconut oil is kept in an autoclave in the presence of water at 70 atmospheres pressure and 225-245oC temperature and split into fatty acids and glycerin, both being soluble under these conditions in water. The glycerin solution separates in the bottom of the autoclave. The aqueous solution contains at the end of the splitting process more than 30 percent glycerin. |
| Continuous High-Pressure Hydrolysis | In this process a constant flow of fat is maintained flowing upward through an autoclave column tower against a downward counterflow of water at a pressure of 600 PSI maintained at temperature of 480-495oF. Under these conditions, the fat is almost completely miscible in water and the hydrolysis take place in a very short time. The liberated fatty acids, washed free of glycerin by the downward percolating water, leave the top of the column and pass through a flash tank while the liberated glycerin dissolves in the downward flow of water and is discharged from the bottom of the tower into the sweet-water storage tank. |

  **e.** **Sorbitol** is a type of sugar alcohol used as a thickener and a skin conditioning agent.[5]

  **f.** **Soy Lecithin** is a phospholipid that is widely used as an emulsifier in food industries. Soy lecithin comprises of phosphatidylcholine, phosphatidylethanolamine, phosphatidylinositol, phosphatidic acid, other minor phospholipids, glycolipid, and neutral lipids.[6]  It is derived from GMO's and/or GE seeds in which DNA splicing has been used to place genes from another source into a plant.  Soy Lecithin is heavily processed to remove the natural bean flavor so that the finished "soy" product no longer tastes like soy.  The soy is further refined through unnatural processes using chemical additives.  Soy Lecithin is commonly refined through the use of a volatile, synthetic solvent called hexane, which is processed from petroleum. *See* 40 C.F.R. 799.2155.

---

[5] http://www.ewg.org/skindeep/ingredient/706239/SORBITOL/
[6] http://www.davidpublishing.com/davidpublishing/Upfile/3/4/2013/2013030471047201.pdf

    **g.**    **Xanthan Gum** is a polysaccharide derived from the fermentation of sugars by anthomonas campeseri bacterium and purification using isopropyl alcohol.  It is listed as a synthetic ingredient by federal regulation and is typically used as a thickening or stabilizing agent in beverages and as emulsifiers in salad dressings.  *See* 7 C.F.R. § 205.605(b).  A 2012 article in the Journal of Pediatrics noted that the U.S. Food & Drug Administration issued warnings that products containing xanthan gum have been linked to illness and death in infants.[7]

8.    Whether Defendants' labeling of the Products as natural is deceptive is judged by whether it would deceive or mislead a reasonable person.  To assist in ascertaining what a reasonable consumer believes the term natural means, one can look to the regulatory agencies for their guidance.

9.    In 2013, the United States Department of Agriculture ("USDA") issued a Draft Guidance Decision Tree for Classification of Materials as Synthetic or Nonsynthetic (Natural).  In accordance with this decision tree, a substance is natural—as opposed to synthetic—if: (a) it is manufactured, produced, or extracted from a natural source (i.e. naturally occurring mineral or biological matter); (b) it has not undergone a chemical change (i.e. a process whereby a substance is transformed into one or more other distinct substances) so that it is chemically or structurally different than how it naturally occurs in the source material; or (c) the chemical change was created by a naturally occurring biological process such as composting, fermentation, or enzymatic digestion or by heating or burning biological matter.

---

[7] Jennifer Beal, MPH et al., *Late Onset Necrotizing Enterocolitis in Infants Following Use of a Xanthan Gum-Containing Thickening Agent*, 161 THE JOURNAL OF PEDIATRICS 2, 354 (2012).

10.     Congress has defined "synthetic" to mean "a substance that is formulated or manufactured by a chemical process or by a process that chemically changes a substance extracted from naturally occurring plants, animals, or mineral sources . . . ." 7 U.S.C. § 6502 (21).

11.     Consumers lack the meaningful ability to test or independently ascertain or verify whether a product is natural, especially at the point of sale.  Consumers would not know the true nature of the ingredients merely by reading the ingredients label.

12.     Discovering that the ingredients are not natural and are actually synthetic requires a scientific investigation and knowledge of chemistry beyond that of the average consumer.  This is why, even though the ingredients listed above are identified on the back of the Products' packaging in the ingredients listed, the reasonable consumer would not understand – nor are they expected to understand - that these ingredients are synthetic.

13.     Moreover, the reasonable consumer is not expected or required to scour the ingredients list on the back of the Products in order to confirm or debunk Defendants' prominent claims, representations, and warranties that the Products are natural.

14.     Defendants did not disclose that the above listed ingredients are synthetic ingredients. A reasonable consumer understands Defendants' natural claims to mean that the Products are natural and do not contain synthetic ingredients.

15.     Defendants have thus violated, *inter alia*,  NY General Business Law § 392-b by: a) putting upon an article of merchandise, bottle, wrapper, package, label or other thing, containing or covering such an article, or with which such an article is intended to be sold, or is sold, a false description or other indication of or respecting the kind of such article or any part thereof; and b)

8

selling or offering for sale an article, which to its knowledge is falsely described or indicated upon any such package, or vessel containing the same, or label thereupon, in any of the particulars specified.

16.     Consumers rely on label representations and information in making purchasing decisions.

17.     The marketing of the Products as natural in a prominent location on the labels of all of the Products, throughout the Class Period, evidences Defendants' awareness that natural claims are material to consumers.

18.     Defendants' deceptive representations and omissions are material in that a reasonable person would attach importance to such information and would be induced to act upon such information in making purchase decisions.

19.     Plaintiff and the Class members reasonably relied to their detriment on Defendants' misleading representations and omissions.

20.     Defendants' false, misleading, and deceptive misrepresentations and omissions are likely to continue to deceive and mislead reasonable consumers and the general public, as they have already deceived and misled Plaintiff and the Class members.

21.     In making the false, misleading, and deceptive representations and omissions described herein, Defendants knew and intended that consumers would pay a premium for Products labeled as being natural over comparable products not so labeled.

9

22.     As an immediate, direct, and proximate result of Defendants' false, misleading, and deceptive representations and omissions, Defendants injured Plaintiff and the Class members in that they:

    **a.**     Paid a sum of money for Products that were not what Defendants represented;

    **b.**     Paid a premium price for Products that were not what Defendants represented;

    **c.**     Were deprived of the benefit of the bargain because the Products they purchased were different from what Defendants represented;

    **d.**     Were deprived of the benefit of the bargain because the Products they purchased had less value than what Defendants represented;

    **e.**     Were denied the benefit of the beneficial properties of the natural supplements Defendants promised.

23.     Had Defendants not made the false, misleading, and deceptive representations and omissions, Plaintiff and the Class members would not have been willing to pay the same amount for the Products they purchased.

24.     Plaintiff and the Class members paid for Products that are natural but received Products that are not natural.  The Products Plaintiff and the Class members received were worth less than the Products for which they paid.

25.     Plaintiff and the Class members all paid money for the Products; however, Plaintiff and the Class members did not obtain the full value of the advertised Products due to Defendants' misrepresentations and omissions. Plaintiff and the Class members purchased, purchased more of, and/or paid more for the Products than they would have had they known the truth about the Products. Consequently, Plaintiff and the Class members have suffered injury in fact and lost money as a result of Defendants' wrongful conduct.

## JURISDICTION AND VENUE

26.     This Court has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. section 1332(d) in that: (1) this is a class action involving more than 100 class members; (2) Plaintiff is a citizen of the State of New York, Defendant Chattem, Inc. is a citizen of the State of Tennessee, Defendant Sanofi Consumer Heathcare is a citizen of the State of New Jersey and (3) the amount in controversy is in excess of $5,000,000, exclusive of interests and costs.

27.     This Court has personal jurisdiction over Defendants because Defendants conduct and transact business in the State of New York, contract to supply goods within the State of New York, and supply goods within the State of New York.

28.     Venue is proper because Plaintiff and many Class Members reside in the Southern District of New York, and throughout the State of New York.  A substantial part of the events or omissions giving rise to the classes' claims occurred in this District.

## PARTIES

### Plaintiff

29.     Plaintiff is an individual consumer who, at all times material hereto, was a citizen of New York, New York.  Plaintiff purchased the Products during the Class Period at retail stores in Manhattan.  The packaging of the Products Plaintiff purchased contained the representation that they were natural. Plaintiff believes that products that are labeled as natural do not contain synthetic ingredients. Plaintiff believes a synthetic ingredient is formulated or manufactured by a chemical process or by a process that chemically changes a substance extracted from naturally occurring plant,

animal, or mineral sources.  If the Products actually were natural as represented on the Products' label, Plaintiff would purchase the Products in the immediate future.

30.    Had Defendants not made the false, misleading, and deceptive representation that the Products were natural, Plaintiff would not have been willing to pay the same amount for the Products, and, consequently, would not have been willing to purchase the Products. Plaintiff purchased, purchased more of and/or paid more for, the Products than he would have had he known the truth about the Products. The Products Plaintiff received were worth less than the Products for which he paid.  Plaintiff was injured in fact and lost money as a result of Defendants' improper conduct.

**Defendants**

31.    Defendant Chattem, Inc. is a corporation with its principal place of business in Chattanooga, Tennessee.  Defendant manufactures, markets, advertises, and distributes the Products throughout the United States.  Defendant created and/or authorized the false, misleading and deceptive advertisements, packaging and labeling for the Products.

32.    Defendant Consumer Healthcare is a corporation with its principal place of business in Bridgewater, New Jersey. Defendant manufactures, markets, advertises, and distributes the Product throughout the United States. Defendant created and/or authorized the false, misleading and deceptive advertisements, packaging and labeling for the Product.

## CLASS ALLEGATIONS

33.    Plaintiff brings this matter on behalf of himself and those who also bought the Products in New York.  As detailed at length in this Complaint, Defendants orchestrated deceptive marketing and labeling practices.  Defendants' customers were uniformly impacted by and exposed to this misconduct.  Accordingly, this Complaint is uniquely situated for class-wide resolution, including injunctive relief.

34.    The Class is defined as all consumers who purchased the Products anywhere in New York state during the Class Period (the "Class").

35.    The Class is properly brought and should be maintained as a class action under Rule 23(a), satisfying the class action prerequisites of numerosity, commonality, typicality, and adequacy because:

36.    Numerosity: Class Members are so numerous that joinder of all members is impracticable.  Plaintiff believes that there are thousands of consumers who are Class Members described above who have been damaged by Defendants' deceptive and misleading practices.

37.    Commonality: The questions of law and fact common to the Class Members which predominate over any questions which may affect individual Class Members include, but are not limited to:

   a.   Whether Defendants are responsible for the conduct alleged herein which was uniformly directed at all consumers who purchased the Products;

   b.   Whether Defendants' misconduct set forth in this Complaint demonstrates that Defendants have engaged in unfair, fraudulent, or unlawful business practices with respect to the advertising, marketing, and sale of their Products;

13

c. Whether Defendants made false and/or misleading statements to the Class and the public concerning the contents of their Products;

d. Whether Defendants' false and misleading statements concerning their Products were likely to deceive reasonable consumers;

e. Whether Plaintiff and the Class are entitled to injunctive relief; and

f. Whether Plaintiff and the Class are entitled to money damages under the same causes of action as the other Class Members.

38. <u>Typicality</u>: Plaintiff is a member of the Class. Plaintiff's claims are typical of the claims of each Class Member in that every member of the Class was susceptible to the same deceptive, misleading conduct and purchased Defendants' Products. Plaintiff is entitled to relief under the same causes of action as the other Class Members.

39. <u>Adequacy</u>: Plaintiff is an adequate Class representative because his interests do not conflict with the interests of the Class Members he seeks to represent, his consumer protection claims are common to all members of the Class and he has a strong interest in vindicating his rights, he has retained counsel competent and experienced in complex class action litigation, and counsel intends to vigorously prosecute this action.

40. <u>Predominance</u>: Pursuant to Rule 23(b)(3), common issues of law and fact identified above predominate over any other questions affecting only individual members of the Class. The Class issues fully predominate over any individual issue because no inquiry into individual conduct is necessary; all that is required is a narrow focus on Defendants' deceptive and misleading marketing and labeling practices.

41.     <u>Superiority</u>: A class action is superior to the other available methods for the fair and efficient adjudication of this controversy because:

    a.  The individual claims of the Class Members may be relatively modest compared with the expense of litigating the claim, thereby making it impracticable, unduly burdensome, and expensive—if not totally impossible—to justify individual actions;

    b.  When Defendants' liability has been adjudicated, all Class Members' claims can be determined by the Court and administered efficiently in a manner far less burdensome and expensive than if it were attempted through filing, discovery, and trial of all individual cases;

    c.  This class action will promote orderly, efficient, expeditious, and appropriate adjudication and administration of Class claims;

    d.  Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action;

    e.  This class action will assure uniformity of decisions among Class Members;

    f.  The Class is readily definable and prosecution of this action as a class action will eliminate the possibility of repetitious litigation;

    g.  Class Members' interests in individually controlling the prosecution of separate actions is outweighed by their interest in efficient resolution by single class action; and

    h.  It would be desirable to concentrate in this single venue the litigation of all plaintiffs who were induced by Defendants' uniform false advertising to purchase their Products as natural.

42.     Accordingly, this Class is properly brought and should be maintained as a class action under Rule 23(b)(3) because questions of law or fact common to Class Members predominate over any questions affecting only individual members, and because a class action is superior to other available methods for fairly and efficiently adjudicating this controversy.

15

**FIRST CAUSE OF ACTION**
**VIOLATION OF NEW YORK GBL § 349**
**(On Behalf of Plaintiff and Other Members of the Class)**

43.     Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

44.     New York General Business Law Section 349 ("GBL § 349") declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in this state . . ."

45.     The conduct of Defendants alleged herein constitutes recurring, "unlawful" deceptive acts and practices in violation of GBL § 349, and as such, Plaintiff and other members of the Class seek monetary damages and the entry of preliminary and permanent injunctive relief against Defendant, enjoining them from inaccurately describing, labeling, marketing, and promoting the Products.

46.     Defendants misleadingly, inaccurately, and deceptively advertise and market their Products to consumers.

47.     Defendants' improper consumer-oriented conduct—including labeling and advertising the Products as being natural —is misleading in a material way in that it, *inter alia*, induced Plaintiff and the other members of the Class to purchase and pay a premium for Defendants' Products and to use the Products when they otherwise would not have. Defendants made their untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

16

48.     Plaintiff and the other members of the Class have been injured inasmuch as they paid a premium for products that were—contrary to Defendants' representations— not natural. Accordingly, Plaintiff and the other members of the Class received less than what they bargained and/or paid for.

49.     Defendants' advertising and Products' packaging and labeling induced Plaintiff and the other members of the Class to buy Defendants' Products and to pay a premium price for them.

50.     Defendants' deceptive and misleading practices constitute a deceptive act and practice in the conduct of business in violation of New York General Business Law §349(a) and Plaintiff and the other members of the Class have been damaged thereby.

57.     As a result of Defendants' recurring, "unlawful" deceptive acts and practices, Plaintiff and the other members of the Class are entitled to monetary, statutory damages of $50 per unit purchased, compensatory, treble and punitive damages, injunctive relief, restitution, and disgorgement of all moneys obtained by means of Defendants' unlawful conduct, interest, and attorneys' fees and costs.

17

**SECOND CAUSE OF ACTION**
**VIOLATION OF NEW YORK GBL § 350**
**(On Behalf of Plaintiff and the Other Members of the Class)**

58.     Plaintiff repeats and realleges each and every allegation contained in all the foregoing

paragraphs as if fully set forth herein.

59.     N.Y. Gen. Bus. Law § 350 provides, in part, as follows:

> False advertising in the conduct of any business, trade, or commerce or in the
> furnishing of any service in this state is hereby declared unlawful.

60.     N.Y. Gen. Bus. Law § 350a(1) provides, in part, as follows:

> The term 'false advertising, including labeling, of a commodity, or of the kind,
> character, terms or conditions of any employment opportunity if such advertising is
> misleading in a material respect.   In determining whether any advertising is
> misleading, there shall be taken into account (among other things) not only
> representations made by statement, word, design, device, sound or any combination
> thereof, but also the extent to which the advertising fails to reveal facts material in the
> light of such representations with respect to the commodity or employment to which
> the advertising relates under the conditions proscribed in said advertisement, or under
> such conditions as are customary or usual . . .

61.     Defendants' labeling and advertisements contain untrue and materially misleading

statements concerning Defendants' Products inasmuch as they misrepresent that the Products are

natural.

62.     Plaintiff and the other members of the Class have been injured inasmuch as they relied

upon the labeling, packaging, and advertising and paid a premium for the Products which were—

contrary to Defendants' representations—not natural.  Accordingly, Plaintiff and the other members

of the Class received less than what they bargained and/or paid for.

63.     Defendants' advertising, packaging, and products' labeling induced Plaintiff and the

other members of the Class to buy Defendants' Products.

18

64.     Defendants made their untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

65.     Defendants' conduct constitutes multiple, separate violations of N.Y. Gen. Bus. Law § 350.

66.     Defendants made the material misrepresentations described in this Complaint in Defendants' advertising and on the Products' packaging and labeling.

67.     Defendants' material misrepresentations were substantially uniform in content, presentation, and impact upon consumers at large.  Moreover, all consumers purchasing the Products were and continue to be exposed to Defendants' material misrepresentations.

68.     As a result of Defendants' recurring, "unlawful" deceptive acts and practices, Plaintiff and the other members of the Class are entitled to monetary, statutory of $500 per unit purchased, compensatory, treble and punitive damages, injunctive relief, restitution, and disgorgement of all moneys obtained by means of Defendants' unlawful conduct, interest, and attorneys' fees and costs.

### THIRD CAUSE OF ACTION
### UNJUST ENRICHMENT
**(On Behalf of Plaintiff and the Other Class Members in the Alternative)**

87.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

88.     Plaintiff, on behalf of himself and consumers nationwide, brings a claim for unjust enrichment.

89.     Defendants' conduct violated, *inter alia*, state and federal law by manufacturing, advertising, marketing, and selling their Products while misrepresenting and omitting material facts.

19

90.     Defendants' unlawful conduct as described in this Complaint allowed Defendants to knowingly realize substantial revenues from selling their Products at the expense of, and to the detriment or impoverishment of, Plaintiff and Class Members, and to Defendants' benefit and enrichment.  Defendants have thereby violated fundamental principles of justice, equity, and good conscience.

91.     Plaintiff and Class Members conferred significant financial benefits and paid substantial compensation to Defendants for the Products, which were not as Defendants represented them to be.

92.     Under New York's common law principles of unjust enrichment, it is inequitable for Defendants to retain the benefits conferred by Plaintiff's and Class Members' overpayments.

93.     Plaintiff and Class Members seek disgorgement of all profits resulting from such overpayments and establishment of a constructive trust from which Plaintiff and Class Members may seek restitution.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of himself and the Class, prays for judgment as follows:

(a) Certifying this matter as a class action under Rule 23 of the FRCP;

(b) Awarding statutory damages of $50 per transaction pursuant to N.Y. GBL § 349;

(c) Awarding statutory damages of $500 per transaction pursuant to N.Y. GBL § 350;

(d) Awarding Plaintiff and Class Members their costs and expenses incurred in this action, including reasonable allowance of fees for Plaintiff's attorneys and experts, and reimbursement of Plaintiff's expenses; and

(e) Granting such other and further relief as the Court may deem just and proper.

Dated: January 21, 2022

Respectfully submitted,

**REESE LLP**

By:  */s/ Michael R. Reese*
  Michael R. Reese
100 West 93rd Street, 16th Floor
New York, New York 10025
Telephone: (212) 643-0500

**REESE LLP**
Charles D. Moore
100 South 5th Street, Suite 1900
Minneapolis, Minnesota 55402
Telephone: (701) 390-7214

**THE SULTZER LAW GROUP P.C.**
Jason P. Sultzer
85 Civic Center, Suite 200
Poughkeepsie, New York 12601
Telephone: (845) 483-7100

*Counsel for Plaintiff and the Class*

21